Brandon J. Schwartz (SBN 361655)
Schwartz APC
1104 Corporate Way, Ste. 244
Sacramento, CA 95831
Telephone: (916) 571-3205
Fax: (279) 348-8203
Email: brandon.schwartz@schwartzapc.com

Attorney for Plaintiff
**Reginald Samuels**

**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

REGINALD SAMUELS,

Plaintiff,

vs.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; ROBERT BARTON; ASHLEY ALLRED; SAPHYRE 23 LAW GROUP, LLC; DONALD WATSON; NATALIA TULENINOVA.

Defendants.

Case No.

**COMPLAINT FOR:**

**(1) First Amendment – Free Speech Clause (42 U.S.C. § 1983)**
**(2) First Amendment – Freedom of Association (42 U.S.C. § 1983)**
**(3) First Amendment – Prisoner Retaliation (42 U.S.C. § 1983)**
**(4) Fourteenth Amendment – Procedural & Substantive Due Process (42 U.S.C. § 1983)**
**(5) Prisoner Civil Rights (Penal Code § 2600 & Penal Code § 2601(c)(1))**
**(6) Tom Bane Civil Rights Act (Civ. Code § 52.1(c))**
**(7) Deceit (Civ. Code § 1709)**
**(8) Conversion (Common Law)**
**(9) Unlawful Business Practice (Bus. & Prof. Code §§ 17200 et. seq.)**

Plaintiff Reginald Samuels, by and through his attorney, Brandon J. Schwartz, alleges as follows:

**THE PARTIES**

1. Plaintiff Reginald Samuels ("Plaintiff") is a citizen of the United States who resides in the Eastern District of California.

2. Defendant California Department of Corrections (CDCR) is a government agency that maintains its headquarters in the Eastern District of California.

3. Defendant Robert Barton ("Barton") was the Presiding Commissioner at the Parole Suitability Hearing held on September 8, 2021, for the Plaintiff. Upon information and belief, Barton was an agent, employee, officer, and/or director for CDCR.

4. Defendant Ashley Allred ("Allred") was the Deputy Commissioner at the Parole Suitability Hearing held on September 8, 2021, for the Plaintiff. Upon information and belief, Barton was an agent, employee, officer, and/or director for CDCR.

5. Defendant Saphyre 23 Law Group, LLC is a California Limited Liability Company with its principal place of business in the Eastern District of California.

6. Defendant Donald Watson ("Watson") is an individual who, at all relevant times, was residing in the Eastern District of California. Upon information and belief, following the allegations below, Watson has relocated to the State of Nevada. Upon information and belief, Watson was an agent, employee, officer, and/or director for Saphyre 23 Law Group, LLC.

7. Defendant Natalia Tuleninova ("Tuleninova") is an individual who, at all relevant times, was residing in the Eastern District of California. Upon information and belief, Tuleninova was an agent, employee, officer, and/or director for Saphyre 23 Law Group, LLC. Tuleninova is also a licensed real estate salesperson in California.

**JURISDICTION & VENUE**

8. This Court has original jurisdiction over Plaintiff's federal law claims under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (federal civil rights jurisdiction). All claims for violations of Plaintiff's rights under the United States Constitution

are brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to his claims occurred in this judicial district.

10. Pursuant to the California Tort Claims Act, Plaintiff, through counsel, presented a tort claim to CDCR within six months of the violations of law alleged herein, which CDCR ignored.

## FACTUAL ALLEGATIONS

11. The Plaintiff is currently sixty-seven years old and is Black. He has never been affiliated with any gangs, and he lives with his mother in Sacramento. In addition to the close connection he has with his wife, the Plaintiff enjoys time with and the support of his sisters.

12. When he was younger, the Plaintiff had a serious substance abuse problem, which began as an attempt to self-medicate in order to deal with horrendous abuse at home. He regrettably supported his drug habit through a series of non-violent theft crimes.

13. In 2013, he was convicted for burglary in Sacramento County Superior Court.

14. Under then-existing law, the Plaintiff was sentenced to a term of twenty-five years to life because this was a subsequent felony conviction.

15. For much of his time in custody, the Plaintiff was housed at the Correctional Training Facility in Soledad, California ("Soledad State Prison").

### I. CONDITIONS AT SOLEDAD STATE PRISON

16. Soledad State Prison is approximately three and a half to four hours from Sacramento, or approximately 200 miles.

17. Most inmates are eligible to participate in in-person visitation, which must be scheduled with the facility in advance.

18. Some incarcerated persons are eligible for "family visits" which occur in apartment-like buildings on prison grounds, and these can last thirty to forty hours. However, each facility maintains a waitlist for family visits.

19. Any inmate who is subject to discipline for violating institutional rules are restricted to non-contact visits. Such visits occur in a booth with a glass partition and last approximately one to two hours.

20. The Plaintiff was approximately fifty-five years old when he was convicted.

21. Soledad State Prison is one of several CDCR prisons that have reports of guards orchestrating "gladiator-style" fights between inmates. Sheyanne N. Romero, California inmates accuse prison guards of orchestrating 'gladiator fights', VISALIA TIMES DELTA (Feb. 25, 2019) https://www.visaliatimesdelta.com/story/news/2019/02/25/inmates-accuse-cdcr-guards-orchestrating-gladiator-fights/2961718002/

22. Soledad State Prison is dilapidated, and CDCR is currently contemplating closing the facility. It does not have modern housing facilities, it is not located near hospitals where people could receive specialized care, and it is not equipped to provide higher levels of mental health care. Aric Sleeper, To cut costs, state legislative office suggests closing a Soledad prison, MONTEREY COUNTY NOW (Jun. 30, 2026) https://www.montereycountynow.com/svnow/news/to-cut-costs-state-legislative-office-suggests-closing-a-soledad-prison/article_0288ebba-c2d3-428c-bce5-b6919c971542.html

## II. PLAINTIFF'S PAROLE BOARD DENIAL

23. During his time in custody, the Plaintiff subscribed to the San Francisco Bay View National Black Newspaper. This newspaper, which was founded in 1976, purports to be the most visited Black newspaper on the web. It also has a print distribution, with circulation throughout the California Bay Area and is also mailed to subscribers, including prisoners.

24. The newspaper covers current events, history, the arts, education, religion, the economy, and politics from their perspective.

25. The newspaper also takes a starkly critical view of the prison system. It features articles written by "our siblings behind bars" under a category entitled "ABOLITION NOW!" Articles here also include advocacy for individuals who are attempting to overturn wrongful convictions or who have successfully overturned wrongful convictions.

26. Its website lists several partnerships, including Greenaction for Health and Environmental Justice, the Human Rights Commission, Legal Services for Prisoners with Children, the San Francisco African American Chamber of Commerce, and the San Francisco Office of the District Attorney.

27. Those interested on the outside can purchase subscriptions for “our caged brothers and sisters.” As one inmate wrote to the paper, “Being locked up, it’s very rare to come across positivity. This system thrives off negativity, so publications like yours be a breath of fresh air for young brothers like me.”

28. Critically, the San Francisco Bay View National Black Newspaper was on a list of newspapers approved for distribution at Soledad State Prison during all relevant times.

29. The Plaintiff had a subscription to the newspaper for approximately two and a half years, thanks to his sister.

30. He found the newspaper to be enriching and a help to his broader efforts to overcome a learning disability.

31. Not every inmate is fortunate enough to have family support on the outside that can provide the “breath of fresh air” that reading compelling and interesting commentary can provide.

32. Prison culture is such that an inmate like the Plaintiff, who was not affiliated with any gang or group, is best served by minding his own business and being courteous to anyone he might encounter. Make no unnecessary enemies.

33. As other inmates also did, and in keeping with being courteous to others, Plaintiff’s practice was to leave finished copies of the newspaper in a common area where those who did not receive outside literature could enjoy the paper.

34. On or about June 20, 2020, correctional officers conducted a search of Soledad State Prison.

35. After prison officials found a copy of the newspaper in another inmate’s cell, bearing a mailing label addressed to the Plaintiff, prison officials designated the Plaintiff as being active in the Black Guerrilla Family (“BGF”).

36. Due to a change in state law, the Plaintiff became eligible for parole in 2021.

37. On September 8, 2021, the Plaintiff had a hearing before the Board of Parole Hearings before Barton and Allred to determine whether he was suitable for release on parole.

38. At that hearing, Barton had a long exchange with the Plaintiff about how the newspaper "has all kinds of propaganda for the black guerrilla family and George Jackson and all kinds of other stuff," and that "that is gang material." Barton further asserted that the newspaper "talks about militancy and using violence to kill officers."[1]

39. Barton characterized the newspaper as "gang material."

40. When the Plaintiff stated that, in addition to the newspaper, his sister sent him "Bible literature" and "daily breads."[2]

41. Barton stated "that stuff's a lot different."

42. Barton commanded the Plaintiff to cancel his subscription to the paper.

43. Barton stated that the Plaintiff's decision to read a newspaper that the Plaintiff characterized as sometimes having "anything good in it about the laws" as evidence that the Plaintiff would likely relapse into drug use.

44. Barton took particular issue with the fact that the newspaper expressed views that were "anti-cops, anti-authority" and included "black history [… and …] critical history that they teach in colleges."

45. Barton stated that the newspaper would be a factor if the Plaintiff was denied parole.

46. When denying the Plaintiff release on parole, the Barton mentioned the newspaper and said that the Plaintiff did not become "a BGF member overnight."

47. Defendant Allred was the other member of the panel who denied the Plaintiff parole because he subscribed to the newspaper.

---

[1] Counsel can locate no articles that advocate for killing officers.

[2] On information and belief, "daily breads" are daily Christian devotionals.

48. Barton and Allred relied on him subscribing to the newspaper to label him a BGF member and to deny his parole, keeping him in prison for another three years.

## III. PLAINTIFF'S TIME ON PAROLE

49. While habeas corpus proceedings were pending in state court, the Plaintiff was released on parole.

50. However, he was still labeled a member of the BGF.

51. This stigma followed the Plaintiff through his entire term of parole, which ultimately ended on September 11, 2026.

52. This stigma still follows the Plaintiff, as it remains in his record and endangers him should there be any contact with law enforcement, however benign – even as a victim.

## IV. DONALD WATSON'S SCHEME

53. The Plaintiff wanted a remedy for all of this. So, he found and hired Watson to represent him. Watson himself had been incarcerated and had been released thanks to the same change in the law that permitted the Plaintiff's release.

54. While incarcerated, Watson became a jailhouse lawyer and helped fellow inmates file motions and petitions.

55. Watson represented to the Plaintiff that he had become a member of the Bar, and he offered to help the Plaintiff with the instant matter.

56. This was to happen under the auspices of Watson's law practice, Saphyre 23 Law Group, LLC.

57. In or around May 2024, the Plaintiff retained Watson.

58. This was a scam. Two months prior the State Bar of California sent Watson and Saphyre 23 Law Group, LLC a Cease-and-Desist Notice for the Unauthorized Practice of Law.

59. Tuleninova assisted Watson is running this scam on the Plaintiff.

**FIRST CAUSE OF ACTION**

**(First Amendment – Free Speech Clause (42 U.S.C. § 1983))**

**(Against Robert Barton & Ashley Allred, In Their Individual Capacities)**

60. The Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

61. The Plaintiff was engaging in First Amendment protected activity by subscribing to and reading a newspaper approved by the prison.

62. By denying the Plaintiff parole and commanding him to no longer subscribe to or read that newspaper, this action would chill a person of ordinary firmness from continuing to subscribe to or read that newspaper.

63. The Plaintiff's reading of that newspaper was a substantial or motivating factor in denying the Plaintiff parole and labeling him a gang member.

**SECOND CAUSE OF ACTION**

**(First Amendment – Freedom of Association (42 U.S.C. § 1983))**

**(Against Robert Barton & Ashley Allred, In Their Individual Capacities)**

64. The Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

65. The Plaintiff had a First Amendment right to associate with other readers of this newspaper to read about and discuss core political ideas.

66. By denying the Plaintiff parole and commanding him to no longer subscribe to or read that newspaper, and to avoid those who did, this action would chill a person of ordinary firmness from continuing to associate with readers of that newspaper.

67. The Plaintiff's possible association with people who read that newspaper was a substantial or motivating factor in denying the Plaintiff parole and labeling him as a gang member.

**THIRD CAUSE OF ACTION**

**(First Amendment – Prisoner Retaliation (42 U.S.C. § 1983))**

**(Against Robert Barton & Ashley Allred, In Their Individual Capacities)**

68. The Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

69. The Plaintiff had a First Amendment right to associate with other readers of this newspaper to read about and discuss core political ideas, as well as to subscribe to and read the approved newspaper.

70. Barton and Allred took adverse action against the Plaintiff by denying him parole and labeling him a gang member.

71. Barton and Allred took this adverse action because of the Plaintiff's protected conduct.

72. The adverse action chilled the Plaintiff's exercise of his First Amendment rights.

73. The adverse action did not reasonable advance a legitimate correctional goal, as the newspaper was approved by CDCR to be mailed to the prison.

74. Such action would chill or silence a person of ordinary firmness from engaging in that protected activity.

75. The Plaintiff's protected activity was a substantial or motivating factor in the adverse action.

**FOURTH CAUSE OF ACTION**

**(Fourteenth Amendment – Procedural & Substantive Due Process (42 U.S.C. § 1983))**

**(Against Robert Barton & Ashley Allred, In Their Individual Capacities)**

76. The Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

77. Barton and Allred labeled the Plaintiff as a gang member solely because he subscribed to a newspaper they disagreed with.

78. The Plaintiff was not afforded a hearing or any opportunity to challenge this finding.

79. Labeling the Plaintiff as a gang member was done arbitrarily and capriciously.

**FIFTH CAUSE OF ACTION**

**(Prisoner Civil Rights (Penal Code § 2600 & Penal Code § 2601(c)(1)))**

**(Against California Department of Corrections and Rehabilitation, Robert Barton & Ashley Allred)**

80. The Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

81. CDCR, Barton, and Allred prevented the Plaintiff from reading a newspaper that did not contain obscenity; did not incite murder, arson, riot, violent racism, or any other form of violence; and did not concern gambling or lottery.

**SIXTH CAUSE OF ACTION**

**(Tom Bane Civil Rights Act (Civ. Code § 52.1(c)))**

**(Against California Department of Corrections and Rehabilitation, Robert Barton & Ashley Allred)**

82. The Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

83. CDCR, Barton, and Allred acted under color of law when they interfered with the Plaintiff's First Amendment Rights through intimidation and coercion in that they subjected him to extended incarceration and labeled him as a gang member because he subscribed to a newspaper whose viewpoint they found objectionable.

84. CDCR, Barton, and Allred carried out this intimidation and coercion for the purpose of coercing the Plaintiff into not reading a newspaper whose viewpoint they found objectionable with at least a reckless disregard for the Plaintiff's statutory and constitutional rights.

85. The interference cause the Plaintiff to suffer damages.

**SEVENTH CAUSE OF ACTION**

**(Deceit (Civ. Code § 1709))**

**(Against Saphyre 23 Law Group, LLC; Donald Watson; & Natalia Tuleninova)**

86. The Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

87. Saphyre 23 Law Group, LLC; Watson; and, Tuleninova represented to the Plaintiff that Saphyre 23 Law Group, LLC was a law firm. Saphyre 23 Law Group, LLC and Watson represented that Watson was an attorney.

88. Those representations were material as to whether the Plaintiff would hire them for legal services.

89. Those representations were false.

90. Saphyre 23 Law Group, LLC; Watson; and, Tuleninova knew those representations were false both because the information was available from the State Bar of California and limited liability companies are statutorily prohibited from being law firms, and because the State Bar of California sent them a cease and desist letter regarding the unauthorized practice of law before they made the representations to the Plaintiff.

91. They made these representations to the Plaintiff with the intent to induce the Plaintiff to hire them.

92. The Plaintiff was unaware of the falsity of the representations, acted in reliance of the representations, and was justified in doing so.

93. The Plaintiff suffered damages as a result.

**EIGHTH CAUSE OF ACTION**

**(Conversion (Common Law))**

**(Against Saphyre 23 Law Group, LLC; Donald Watson; & Natalia Tuleninova)**

94. The Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

95. The Plaintiff had ownership over his money.

96. The Plaintiff provided this money to Saphyre 23 Law Group, LLC; Watson; and Tuleninova in order to secure legal services.

97. Instead of providing those services, they disposed of the money in a way that was inconsistent with the Plaintiff's rights.

98. The Plaintiff suffered damages as a result.

**NINTH CAUSE OF ACTION**

**(Unlawful Business Practice (Bus. & Prof. Code §§ 17200 et. seq.))**

**(Against Saphyre 23 Law Group, LLC; Donald Watson; & Natalia Tuleninova)**

99. The Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

100. Saphyre 23 Law Group, LLC; Watson; and Tuleninova engaged in an unlawful and fraudulent business practice by falsely holding themselves out to be a law firm.

101. The Plaintiff suffered damages as a result.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Reginald Samuels prays for judgment against the Defendants as to each claim for relief as follows:

**AS TO THE PLAINTIFF'S FIRST CAUSE OF ACTION**:

1. For general and special damages according to proof at trial;
2. For punitive damages (against Robert Barton and Ashley Allred only);
3. For reasonable attorney fees pursuant to 42 U.S.C. § 1988(b);
4. For costs pursuant to Fed. R. Civ. P. § 54(d);
5. For declaratory judgment finding that Reginald Samuels is not and has never been a member of the Black Guerilla Family; and,
6. For such other relief as the Court deems just and proper.

**AS TO THE PLAINTIFF'S SECOND CAUSE OF ACTION**:

1. For general and special damages according to proof at trial;
2. For punitive damages (against Robert Barton and Ashley Allred only);
3. For reasonable attorney fees pursuant to 42 U.S.C. § 1988(b);

4. For costs pursuant to Fed. R. Civ. P. § 54(d);
5. For declaratory judgment finding that Reginald Samuels is not and has never been a member of the Black Guerilla Family; and,
6. For such other relief as the Court deems just and proper.

**AS TO THE PLAINTIFF'S THIRD CAUSE OF ACTION**:

1. For general and special damages according to proof at trial;
2. For punitive damages (against Robert Barton and Ashley Allred only);
3. For reasonable attorney fees pursuant to 42 U.S.C. § 1988(b);
4. For costs pursuant to Fed. R. Civ. P. § 54(d);
5. For declaratory judgment finding that Reginald Samuels is not and has never been a member of the Black Guerilla Family; and,
6. For such other relief as the Court deems just and proper.

**AS TO THE PLAINTIFF'S FOURTH CAUSE OF ACTION**:

7. For general and special damages according to proof at trial;
8. For punitive damages (against Robert Barton and Ashley Allred only);
9. For reasonable attorney fees pursuant to 42 U.S.C. § 1988(b);
10. For costs pursuant to Fed. R. Civ. P. § 54(d);
11. For declaratory judgment finding that Reginald Samuels is not and has never been a member of the Black Guerilla Family; and,
12. For such other relief as the Court deems just and proper.

**AS TO THE PLAINTIFF'S FIFTH CAUSE OF ACTION**:

13. For general and special damages according to proof at trial;
14. For punitive damages (against Robert Barton and Ashley Allred only);
15. For costs pursuant to Fed. R. Civ. P. § 54(d);
16. For declaratory judgment finding that Reginald Samuels is not and has never been a member of the Black Guerilla Family; and,
17. For such other relief as the Court deems just and proper.

**AS TO THE PLAINTIFF'S SIXTH CAUSE OF ACTION**:

18. For general and special damages according to proof at trial;
19. For exemplary damages pursuant to Civ. Code § 52(b)(1) (against Robert Barton and Ashley Allred only)
20. For attorney fees where allowed by law pursuant to Civ. Code § 52(b)(3);
21. For costs of the suit incurred;
22. For declaratory judgment finding that Reginald Samuels is not and has never been a member of the Black Guerilla Family; and,
23. For such other relief as the Court deems just and proper.

**AS TO THE PLAINTIFF'S SEVENTH CAUSE OF ACTION**:

24. For general and special damages according to proof at trial;
25. For punitive damages;
26. For attorney fees where allowed by law;
27. For costs of the suit incurred; and,
28. For such other relief as the Court deems just and proper.

**AS TO THE PLAINTIFF'S NINTH CAUSE OF ACTION**:

1. For general and special damages according to proof at trial;
2. For punitive damages;
3. For costs of the suit incurred; and,
4. For such other relief as the Court deems just and proper.

**REQUEST FOR JURY TRIAL**

Plaintiff Reginald Samuels hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: September 24, 2026

Schwartz APC

By: /s/ Brandon J. Schwartz
Brandon J. Schwartz
Attorney for Plaintiff REGINALD SAMUELS